**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

JIMMY FORD                                                                              PLAINTIFF

vs.                                                         Civil Action No. 3:99-cv-435WS

DIVERSIFIED TECHNOLOGY, INC.                             DEFENDANT

### ORDER

This matter was tried to a jury on the plaintiff Jimmy Ford's claims against the defendant, Diversified Technology, Inc. ("DTI") for age discrimination under the Age Discrimination in Employment Act ("ADEA"), Title 29 U.S.C. § 626(c),[1] and three counts of retaliation under Title VII, Title 42 U.S.C. § 2000e, *et seq.*[2] Of the Equal Employment

---

[1] Title 29 U.S.C. § 626(c) provides in pertinent part: (1) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: Provided, That the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter.

[2] Title 42 U.S.C. § 2000e-3 provides in pertinent part: It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Title 42 U.S.C. § 2000e-5(f) further provides in pertinent part: (1) . . . If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government,

1

Opportunity Act ("EEOC"). The plaintiff's ADEA claim, like the first of his retaliation claims, was based on a reduction in the plaintiff's job responsibility and a change in the plaintiff's office space. The plaintiff's retaliation claims were based on (1), the plaintiff's failure to receive a bonus during his final fiscal year with the DTI after having received a bonus for fifteen years of employment; (2), diminution of the plaintiff's office space and duties and, (3) the plaintiff's ultimate termination in January of 2000, all because the plaintiff had been present during an EEOC sexual harassment investigation which implicated the son of DTI's President, Wenton Walker, Jr., and because the plaintiff filed his own EEOC complaint asserting age discrimination and retaliation by DTI's President, Wenton Walker, Sr.

The jury rendered a verdict in favor of the plaintiff on all counts. In so doing, the jury determined that DTI had intentionally discriminated against the plaintiff and discharged him in retaliation for his participation in the EEOC sexual harassment investigation of Wenton Walker, Jr., for his filing of an EEOC claim and the instant lawsuit. The jury also concluded that DTI had discriminated against the plaintiff on account of his age when it moved his office and reduced his job responsibilities.

This court subsequently set aside the jury's verdict on the plaintiff's ADEA claim. The jury's award of damages to the plaintiff based on his retaliation claims was $350,000.00, plus punitive damages in the amount of $1,000,000.00. This court

---

governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

reduced the amount of punitive damages to $100,000.00 to conform to the statutory cap on such damages.[3]

A Judgment was entered by the court. The parties then submitted post trial motions, for judgment as a matter of law pursuant to Rule 50(b)[4] of the Federal Rules of Civil Procedure by the defendant DTI [**Docket No. 89**], and the plaintiff's motion to correct the court's Judgment [**Docket No. 82**]. As noted by the plaintiff, due to a clerical oversight, the language of the Judgment stated that the entire action was dismissed, thereby leaving the impression that the plaintiff's case had been dismissed by the court. This court has reviewed the Judgment and shall direct that the Judgment be corrected.

The plaintiff objects to DTI's motion for judgment as a matter of law, contending that the motion was not filed within ten (10) days of this court's entry of judgment as required by Rule 50(b). DTI responds that the plaintiff's objection does not take into

---

[3]Title 42 U.S.C. § 1981(b)(3)(B) provides that, "[t]he sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party – (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; ... ."

[4]Rule 50 (b) provides that, "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law."

3

account Rule 6(e)[5] of the Federal Rules and its three additional days for mailing provision.

Also outstanding is the matter of the plaintiff's claim for front pay. This court originally found that $25,000.00 would be an appropriate amount. Later, this court withdrew this pronouncement on front pay in order to give the matter further consideration. The court now is prepared to address this matter as well.

## **THE MATTER OF A TIMELY MOTION**

Rule 6(b)(2) of the Federal Rules of Civil Procedure provides that, "[a] court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b), except as those rules allow." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). So, this court is not to extend the time periods for action under these subdivisions of the Rules.

DTI says that its motion for judgment as a matter of law is timely, relying on Rule 6(e) of the Federal Rules of Civil Procedure (see footnote 5). Rule 6(e) adds three days to a prescribed period of time after service of a pleading and/or notice, if the pleading and/or notice is served upon a party in accordance with Rule 5(b)(2)(B), (C), (D) or (E). However, Rule 6(e) does not apply to time periods such as the ten-day period under Rule 50(b) that begins with the filing in court of a judgment or an order, even if the judgment or order is served by mail. *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 468 (5th Cir. 1998)., *cert. denied*, 526 U.S. 1005, 119 S.Ct. 1143,

---

[5]Rule 6(d) of the Federal Rules of Civil Procedure, formerly Rule 6(e), provides that, "[w]henever a party must or may act within a prescribed period after service and services is made under Rule 5(b)(2)(B), (C) or (D), 3 days are added after the prescribed period would otherwise expire under subdivision (a).

4

143 L.Ed.2d 210 (1999); *Welsh v. Elevating Boats, Inc.*, 698 F.2d 230, 232 (5th Cir. 1983).

Rule 50(b) provides that, "[n]o later than 10 days *after the entry of judgment*, ... the movant may file a renewed motion for judgment as a matter of law. DTI acknowledges that this court entered its Judgment on February 28, 2002, and that DTI's motion for judgment as a matter of law was filed on March 14, 2002. Federal Rule of Civil Procedure 6(a)(1) provides that, when computing time, "[e]xclude the day of the act, event or default that begins the period." Rule 6(a)(2)[6] directs the court to exclude intermediate Saturdays, Sundays, and legal holidays when the period (to be determined) is less than 11 days." February 28, 2002, fell on Thursday. So, the first day to be counted was Friday, March 1, 2002. Excluding the intermediate Saturdays and Sundays as directed by Rule 6(a)(2), March 14, 2002, is the tenth day from this court's Judgment. While the plaintiff contends that DTI's motion was not timely, the plaintiff offers no explanation for this assertion in light of these Rules. Thus, this court

---

[6]The 1985 amendment to Rule 6(a) of the Federal Rules of Civil Procedure extended the exclusion of intermediate weekends and holidays to the computation of time periods of less than eleven days. The Advisory Committee's comments explain that the purpose of the amendment was to alleviate the hardship Rule 6(b) causes in cases where response times are only 10 days:

> The Rule also is amended to extend the exclusion of intermediate Saturdays, Sundays, and legal holidays to the computation of time periods less than 11 days. Under the current version of the Rule, parties bringing motions under rules with 10-day periods could have as few as 5 working days to prepare their motions. This hardship would be especially acute in the case of Rules 50(b) and (c)(2), 52(b), and 59(b), (d), and (e), which may not be enlarged at the discretion of the court. *See* Rule 6(b). If the exclusion of Saturdays, Sundays, and legal holidays will operate to cause excessive delay in urgent cases, the delay can be obviated by applying to the court to shorten the time. *See* Rule 6(b).
> Fed.R.Civ.P. 6 advisory committee note (1985 amendment).

5

finds DTI's Rule 50(b) motion to be timely, having been filed on the tenth day.

Because Rule 6(b)(2) provides that the ten-day period under Rule 50(b) cannot be extended, DTI's reliance on Rule 6(e)'s additional three days for mailing is improper since the ten-day period in question here begins with this court's entry of a judgment or order. *See Jackson v. Crosby*, 375 F.3d 1291, 1296 (11th Cir. 2004), citing *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111 (11th Cir. 1993) (Rule 6(e) does not apply to time periods that begin with the filing in court of a judgment or an order); *see also Halicki*, and *Welch*. Nevertheless, DTI's motion was filed within the ten-day limit on Rule 50(b) motions and is timely.

## THE STANDARD FOR JUDGMENT AS A MATTER OF LAW

A motion for judgment as a matter of law is appropriate when, "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *See* Rule 50(a) of the Federal Rules of Civil Procedure (footnote 4). So, "if reasonable persons could differ in their interpretations of the evidence, then the motion should be denied." *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005). "A post-judgment motion for judgment as a matter of law should only be granted when 'the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.' " *Id.* Because the jury's verdict is afforded great deference, this court must view all the evidence and draw all reasonable inferences in the light most favorable to the verdict. *Id.* Judgment as a matter of law is proper when, "the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable jurors could not arrive at a contrary verdict." *Arsement v. Spinnaker Exploration Co.*, 400 F.3d 238, 248-49 (5th Cir. 2005) (quoting *Bellows v. Amoco Oil Co.*, 118 F.3d 268,

273 (5th Cir. 1997)).

## **THE STANDARD FOR RETALIATION CLAIMS**

Title 42 U.S.C. § 2000e-3(a) provides in pertinent part that, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  So, "[a]n employee engages in protected activity when [he] has (1) opposed any practice made an unlawful employment practice' by Title VII or (2) has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372-73 (5th Cir. 1998), *cert. denied*, 525 U.S. 1068, 119 S.Ct. 798, 142 L.Ed.2d 660 (1999).

In order to establish a *prima facie* case of retaliation, the plaintiff must show that (1), he engaged in statutorily protected activity under Title VII;  (2), that action was taken by the employer against the plaintiff that a reasonable employee would consider materially adverse; and (3), a causal connection exists between the protected activity and the adverse action. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).  Prior to the United States Supreme Court's decision in *Burlington Northern* the United States Court of Appeals for the Fifth Circuit rule for retaliation claims was that "[a]dverse employment actions included only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Watkins v. Texas Dept. of Criminal Justice*, 269 Fed. Appx. 457,

461, 2008 WL 686571, 3 (5th Cir. 2008) (quoting *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). However, in *Burlington Northern*, the Supreme Court rejected the "ultimate employment decision" standard, and now only requires a plaintiff to show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 67-68.

The *McDonnell Douglas*[7] burden-shifting scheme which applies to Title VII disparate treatment claims also applies to claims that an employer retaliated against an employee for engaging in activities protected by Title VII. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996); *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983). The plaintiff must establish a *prima facie* case of unlawful retaliation. The burden of production then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. Once a defendant has satisfied its burden to articulate a legitimate, nondiscriminatory reason for its actions, then, under the *McDonnell Douglas* framework, the burden shifts back to the plaintiff, who, then presents evidence that the defendant's proffered reason is merely a pretext for illegal discrimination. *Moore v. Eli Lilly & Company*, 990 F.2d 812, 815 (5th Cir. 1993). The plaintiff must "adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason for the adverse employment action is a pretext for retaliation." *Long,* 88 F.3d at 304.

---

[7]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

## ANALYSIS

### A. The Retaliation Claim

The plaintiff Jimmy Ford's retaliation claim against DTI is based on his having participated in an EEOC investigation which implicated the son of Wenton Walker, Sr. Wenton Walker, Sr., was the President and ultimate decision maker for DTI at the time of that investigation. The plaintiff's participation in the EEOC investigation is protected conduct under Title VII. *Douglas v. DynMcDermott Petroleum*, 144 F.3d at 372-73. The plaintiff adduced evidence which showed that he was subjected to several adverse employment actions after his participation in the EEOC investigation by two successive ultimate decision makers at DTI, Wenton Walker, Sr., and Barrie McArthur, who took over the Presidency of DTI afer Walker, Sr., stepped down.

Once a plaintiff adduces evidence showing that he engaged in protected conduct, subsequently suffered an adverse employment action, and that the adverse employment action was taken in response to protected conduct, he has established the elements of a *prima facie* retaliation claim. *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 330 (5th Cir. 2004).

The jury in the instant case was presented with evidence that the plaintiff participated in an EEOC investigation where a female employee who had been discharged from her employment brought an EEOC complaint against DTI, asserting, among other things, that she had been sexually harassed by a DTI supervisor, without naming the supervisor. The EEOC investigation consisted of interviews with DTI employees, some of whom had observed the female employee massaging the back of Wenton Walker, Jr., the son of DTI's President. The jury heard testimony that Wenton

9

Walker, Jr., was angered when he was interviewed by the plaintiff and DTI's attorney; that Wenton Walker, Jr. complained to his father, DTI's President Wenton Walker, Sr., causing him to call and castigate the plaintiff for his having participated in the investigation.

The plaintiff then presented a chain of unprecedented events, including the plaintiff's being denied entry to office of DTI's President, being ostracized from important meetings and kept incommunicado regarding company operations for which the plaintiff had been responsible, being called a liar by DTI's President regarding the plaintiff's interview with Wenton walker, Jr., being removed from his own office, having his job duties severely curtailed, and having his phone and computer removed from his office on a day he kept an appointment with his physician. In summary, after the EEOC investigation, the evidence showed that the plaintiff became a target for several retaliatory actions. While DTI points to evidence suggesting that Barrie McArthur, a DTI Vice-President, omitted the plaintiff's name from meeting schedules, the reasonable trier of fact could have concluded that Barrie McArthur acted at the direction of Wenton Walker, Sr.

Then, after Wenton Walker, Sr., stepped away form the Presidency of DTI in favor of Barrie McArthur, the plaintiff was denied an annual bonus, a bonus the plaintiff had received in every year but one over the past fifteen years, notwithstanding the plaintiff's very favorable job evaluations over the time period in question. While testimony suggested that the decision to deny the plaintiff's bonus was that of Les Lampton, another official at DTI, the evidence overall, as viewed by a reasonable trier of fact, offered sufficient support for the conclusion that Lampton could have acted with

Barrie McArthur's approval or upon his suggestion.

The plaintiff also testified about being reprimanded for locking the front door to DTI at 5:15 P.M., even though this was the usual practice, and for using a fork lift with a platform to change light bulbs in high places. The plaintiff then referred to his termination in January of 2000, which occurred after the plaintiff filed his Title VII complaint and an amended complaint in federal court.

The defendant responds that DTI's President, Wenton Walker, Sr., was the only person who may have had motive to retaliate against the plaintiff, and that he no longer occupied his executive position with DTI at the time the plaintiff was denied a bonus and, ultimately, terminated. This assertion by DTI focuses only upon the denial of a bonus and the plaintiff's ultimate termination, without also acknowledging the events which occurred while Wenton Walker, Sr., was still the President. As for Walker Sr.'s successor, Barrie McArthur, the defendant asserts that he simply did not like the plaintiff, and would have fired him well before the EEOC investigation if the plaintiff had not been so close to Wenton Walker, Sr. DTI also contends that the plaintiff's regular pay and benefits remained the same during the alleged retaliatory activity, and that the plaintiff's job duties were taken away, restored, and then taken away again only because of poor performance.

## B. The Nondiscriminatory Reason Argument

DTI says it produced evidence which should have convinced the jury that there was a nondiscriminatory reason for the withholding of the plaintiff's bonus and for the plaintiff's termination from his employment after Barrie McArthur took over the helm at DTI. The evidence, says DTI, showed that Wenton Walker, Sr., stepped down from his

executive position and that Barrie McArthur then took over Walker Sr.'s role as the ultimate decision maker for DTI. DTI then notes that it presented evidence that Barrie McArthur did not like the plaintiff and would have had him fired years before the EEOC investigation had the plaintiff not been so close to Wenton Walker, Sr.

When an employer can show a nondiscriminatory reason for having taken an adverse action against an employee who is charging retaliation in violation of Title VII, then the employer has satisfied its burden of production. *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). However, a plaintiff may raise a fact issue as to pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is not credible in light of all the evidence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In the instant case the jury considered the plaintiff's evidence that he had suffered adverse employment action between May of 1999 and January of 2000, after having participated in the EEOC investigation, and, eventually, was terminated from his employment after having engaged in protected activity, including the filing of a complaint in this court. The jury weighed this evidence against DTI's claims of nondiscriminatory reasons for its decisions and found the plaintiff's claims of retaliation to be more credible.

This court is persuaded that the facts and inferences of the instant case simply do not point so strongly and overwhelmingly in favor of DTI that reasonable jurors could not arrive at a verdict unfavorable to DTI. Thus, this court finds no basis here for granting DTI's Rule 50(b) motion for judgment as a matter of law.

### B. The "Cat's Paw" Theory

DTI argues that the plaintiff has attempted to set up a "cat's paw[8]" argument in order to impute liability for retaliation to Wenton Walker, Sr., due to the influence of Barrie McArthur, a DTI Vice President who was subordinate to Walker, Sr., or due to the influence of Les Lampton on Barrie McArthur once McArthur took over the company.

The "cat's paw" theory of liability for discriminatory retaliation means that, "the discriminatory animus of a manager can be imputed to an ultimate decision maker if the decision maker 'acted as a rubber stamp, or the "cat's paw," for the subordinate employee's prejudice." *Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)). "To invoke the cat's paw analysis, [the plaintiff] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited [retaliatory] animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decision maker.' " *Roberson v. Alltel Information Services*, 373 F.3d 647, 653 (5th Cir. 2004).

The evidence presented by the plaintiff in the instant case could support the conclusion by the jury that Wenton Walker, Sr., began a series of retaliatory employment actions against the plaintiff after the EEOC investigation participated in by the plaintiff implicated Walker, Sr.'s son. Wenton Walker, Sr., then stepped down as President of DTI and Barrie McArthur took over management of the company. The

---

[8] A "cat's paw" is defined by Merriam-Webster's Third New International Dictionary 354 (3rd ed. 1969) as "[fr. the fable of the monkey that used a cat's paw to draw chestnuts from the fire]: one used by another as a tool: dupe."

13

plaintiff's annual bonus was denied in December of 1999 and he was terminated from employment in January of 2000, shortly after Barrie McArthur took over the company. Reasonable finders of fact could conclude that both Wenton Walker, Sr., and Barrie McArthur engaged in retaliation against the plaintiff, given the proximity of the adverse employment events to the EEOC investigation and the plaintiff's filing his own EEOC complaint and lawsuit.

The evidence presented simply was not conclusive of any leverage or influence exerted by any intermediate DTI manager over an ultimate decision maker. This court is persuaded that sufficient evidence was submitted to the jury to justify a finding that Walker, Sr., made his own decision to retaliate against the plaintiff. The jury also could infer that Barrie McArthur made the decisions to deny the plaintiff his bonus and to terminate him after McArthur took over the management of DTI, notwithstanding testimony that Les Lampton may have recommended that the plaintiff receive no bonus for 1999. Consequently, this court is not persuaded that the "cat's paw" theory is applicable to the facts of this case.

This court has fully reviewed the defendant's submissions in support of the Rule 50(b) motion and is satisfied that these matters have been resolved by reasonable jurors who could differ over the causal connection between the events presented by the plaintiff regarding his protected participation in a co-worker's EEOC investigation, his treatment by DTI after this investigation, and the causes for the plaintiff's losing his bonus and his eventual termination. "A motion for judgment as a matter of law should only be granted when 'the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.' " *Id. Bryant v. Compass Group*

*USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005). In the instant case they do not.

## FRONT PAY

The plaintiff has moved for front pay in order to fully compensate him for DTI's adverse employment actions. Unlike an award of compensatory damages, awards of front and back pay under Title VII are decided by the district court. *Allison v. Citgo Petroleum Corporation*, 151 F.3d 402, 423 n. 19 (5th Cir. 1998). Front pay is awarded to compensate the plaintiff for lost future wages and benefits. *Floca v. Homcare Health Services, Inc.*, 845 F.2d 108, 112-13 (5th Cir.1988) (Title VII case). Of course, the preferred equitable remedy for a prevailing plaintiff in a retaliatory discharge case is reinstatement. *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991). Where reinstatement is not feasible, however, the court may award front pay. *Id*. In exercising its discretion, this court is mindful that "[f]ront pay is a remedy for the post-judgment effects of discrimination, that is, front pay is designed to compensate the plaintiff for lost income from the date of the judgment to the date the plaintiff finally obtains the position the plaintiff would have occupied but for the discrimination." *Floca*, 845 F.2d at 112. This court recognizes that "[c]alculations of front pay cannot be totally accurate because they are prospective and necessarily speculative in nature." *Reneau*, 945 F.2d at 870.

In the instant case, all parties agree that reinstatement is not feasible. In 1972, Congress expanded § 706(g) of the Civil Rights Act of 1964 to specify that a court could, in addition to awarding those remedies previously listed in the provision, award "any other equitable relief as the court deems appropriate." *Pollard v. E.I. du Pont de Nemours & Company*, 532 U.S. 843, 850, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001).

After this amendment to § 706(g), courts endorsed a broad view of front pay. *Id.*, citing, for example, *Patterson v. American Tobacco Company*, 535 F.2d 257, 269 (4th Cir. 1976) (taking the broad view); *and see Walsdorf v. Board of Commissioners,* 857 F.2d 1047, 1054 (5th Cir. 1988) (plaintiff entitled to front pay at the salary of Assistant Superintendent from the date of this judgment onward).

The district court may deny front pay because of insufficient evidence; however, if the court finds that there is sufficient evidentiary support for calculating front pay, the court must additionally consider several factors. *Reneau*, 945 F.2d at 870. These non-exclusive factors include the length of prior employment, the permanency of the position held, the nature of work, the age and physical condition of the employee, and the possible consolidation of jobs. *Id.* at 871. The court may also consider a "myriad" of other nondiscriminatory factors. *Id.*

This court concludes from the evidence that the plaintiff is not entitled to front pay for the following reasons: (1), after the plaintiff was fired in January of 2000, he sought other employment for a short time, then determined that he would retire; (2), the plaintiff testified that he would have liked to retire at age 55 had he been financially able to do so, and also that he considered retirement once Wenton Walker, Sr., left DTI; (3) Wenton Walker, Sr., did step down as president of DTI in December of 1999, less than one month before the plaintiff was terminated; (4), the plaintiff, after Wenton Walker, Sr.'s departure, found himself in an unfriendly, uncooperative work-environment; and (5), the plaintiff reached the early Social Security retirement age of sixty-two (62) years in December of 2000. So, based on these factors, as well as the factors set forth in *Reneau*, this court finds that the plaintiff's retirement prior to judgment in this case

16

precludes his claim for damages occurring after he was terminated.  Thus, in this court's view, the plaintiff is not entitled to front pay.

## **CONCLUSION**

Therefore, based on the foregoing analysis, this court hereby denies the defendant DTI's motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure by the defendant DTI [**Docket No. 89**], and grants the plaintiff's motion to correct the language of this court's Judgment [**Docket No. 82**], which inadvertently dismissed the plaintiff's claims.  Judgment is granted for the plaintiff in the amounts of $350,000.00 in compensatory and $100,000.00 punitive damages.

**SO ORDERED** this the 17th day of December, 2008.

                                      **s/ HENRY T. WINGATE**
                                      **CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:99-cv-435WS
Order